# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SANDRA J. DOWLING, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-08-007-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sandra J. Dowling requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

### Claimant's Background

The claimant was born on March 11, 1950, and was fifty-six years old at the time of the administrative hearing. She has a high school education and previously worked as a grocery store auditor. She alleges she has been unable to work since December 31, 1999, because of diabetes mellitus, hypertension, fibromyalgia, and depression/dysthymic disorder.

### Procedural History

On May 24, 2004, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Michael Kirkpatrick conducted a hearing and determined the claimant was not disabled on August 28, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant retained the residual functional capacity ("RFC") "to perform medium work that is task-oriented and does not involve interaction with the general public or tasks of a detailed or complex nature. Claimant retains the ability to perform simple, routine and unskilled tasks." (Tr. 25). The ALJ concluded that the claimant was not disabled because

there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, general laborer, sweeper/cleaner and packer/bander/wrapper (Tr. 28-29).

**Review**

The claimant contends that the ALJ erred: (i) by making an RFC determination that was not supported by substantial evidence; (ii) by failing to evaluate her obesity; (iii) by failing to properly analyze her credibility; and, (iv) by failing to properly evaluate the medical opinion evidence. As part of her first argument, the claimant contends that the ALJ improperly discounted her fibromyalgia when considering the RFC. The Court finds this argument persuasive.

The record reveals that the claimant received treatment for her fibromyalgia from Dr. Bradley Hodge, M.D. In August 2002, the claimant complained of muscles aches and was noted to have fibromyalgia and chronic fatigue syndrome (Tr. 185-86). She complained of back pain in October 2002 (Tr. 181) and right arm and back pain in January 2003 (Tr. 176). By April 2004, the claimant indicated her arm pain was better but still a problem, and she was assessed with spasms in her trapezius and shoulder area (Tr. 174). In May 2004, Dr. Hodge completed a letter wherein he indicated that he had been treating the claimant since June 1997. He noted that rheumatologist Dr. Gangasani actually diagnosed the claimant with chronic fatigue syndrome and fibromyalgia in 2001 and that the claimant also had a history of diabetes mellitus, hyperlipidemia and hypertension. He reported that the claimant currently had increasing pain in her legs, difficulty sleeping, and a lack of energy. Dr. Hodge believed the claimant's condition constituted a disability (Tr. 137-38).

In October 2004, the claimant underwent a physical examination with consulting physician Dr. Gordon Strom, Jr., M.D. She reported taking Methocarbamol, Naprosyn, and Ranitidine for joint symptoms in addition to medications for diabetes, her psychiatric condition, and cholesterol. The claimant complained of fatigue and muscle aches. Examination of the claimant revealed adequate range of motion of the cervical, lumbar, and thoracic spines. The claimant also could "elevate her arms above her head, flex her elbows, rotate her wrists and ha[d] adequate grip strength." There was some slight limitation in hip flexion but the claimant "could flex both knees, dorsiflex and plantar flex both feet and [could] invert and evert both feet." Her only limitation was muscle aches and her complaints of pain. Dr. Strom noted that the claimant was depressed. He was concerned about whether the claimant suffered from fibromyalgia or whether it was "just the physiologic changes associated with depression." He thought it was "unclear." (Tr. 198-205).

The claimant also received treatment at the Durant Family Medicine Clinic for her fibromyalgia in June 2005 and September 2005 (Tr. 259-60, 263-64). In late September 2005, the claimant complained of muscle aches and weakness and noted that her pain was keeping her from working (Tr. 257-58). In addition to medication for her blood pressure, diabetes, and depression, the claimant was prescribed Methocarbamol, a muscle relaxer (Tr. 254). By January 2006, the claimant complained of muscle aches, dysphagia, and somnolence (Tr. 252-53).

The ALJ determined that the claimant's fibromyalgia was a severe impairment at step two (Tr. 23) but expressed doubt as to the severity of her condition at step four. For example, in discussing the claimant's RFC, the ALJ observed the following:

> [A] diagnosis [of fibromyalgia] is descriptive of symptoms and does not represent a specific inflammatory process or other abnormality that is clinically or diagnostically discernable. It is typically benign and does not commonly result in prolonged episodes of acute and incapacitating pain. Fibromyalgia is generally described as muscle aches and pain and/or soft tissue tenderness. Frequently, it is the result of stress and may remit spontaneously with decreased stress, but can recur at frequent intervals or become chronic. A number of circumstantial stressors and inadequate coping skills are indicated in the record.

(Tr. 25). He also discussed the claimant's examination by Dr. Strom and noted that "[the] claimant subjectively alleged severe pain at all times in all muscle groups." The ALJ ultimately determined that "[t]he lack of any significant restriction in range of motion [was] extremely inconsistent with the degree of pain claimant reported to Dr. Strom and alleged at the hearing, which strongly suggest[ed] that subjective allegations of pain severity [were] exaggerated. There [was] no medically determinable impairment diagnostically or clinically indicated that [could] reasonably be expected to result in the degree of pain and functional limitation claimant described to Dr. Strom." (Tr. 26).

The ALJ's evaluation of the claimant's fibromyalgia is deficient for two reasons. First, the ALJ apparently rejected the claimant's complaints of pain based solely on a lack objective support in the record. But the symptoms of fibromyalgia are "entirely subjective." *See*, *e. g.*, *Moore v. Barnhart*, 114 Fed. Appx. 983, 991-92 (10th Cir. 2004), *citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown,

there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement.") and *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia.") [citation omitted]. Thus, the lack of significant restrictions in the claimant's range of motion, for example, does not necessarily mean that her fibromyalgia and the pain it causes her are not disabling. Second, the ALJ apparently concluded that Dr. Strom doubted the claimant as well, *i. e.*, that she was exaggerating her symptoms or malingering. But Dr. Strom's report clearly does not support such a determination; he questioned *only* the claimant's diagnosis of fibromyalgia (not the severity of her symptoms): "It appears to me that this patient has significant depression and whether this is fibromyalgia or just the physiologic changes associated with depression is unclear." (Tr. 199).

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further consideration of the claimant's fibromyalgia. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC,

he should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 19th day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**